**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

**SHIRLEY BOROSS, as Executrix of the Estate of Donald Boross,**

**Plaintiff,**

v.   4:10-cv-144

**LIBERTY LIFE INSURANCE COMPANY, GMAC MORTGAGE, LLC, and FEDERAL NATIONAL MORTGAGE ASSOCIATION,**

**Defendants.**

## ORDER

### I. INTRODUCTION

This case is before the Court on Defendant GMAC Mortgage, LLC ("GMAC") and Defendant Federal National Mortgage Association's ("Fannie Mae") motion for summary judgment, see Doc. 38, and Liberty Life Insurance Company's ("Liberty," collectively with GMAC and Fannie Mae, "Defendants") separate motion for summary judgment, see Doc. 42.

### II. FACTS

Plaintiff Shirley Boross ("Boross") and her husband, Donald, obtained a mortgage loan from Taylor, Bean & Whitaker Mortgage Corp. that was secured by real property located at 285 Rushing Street in Richmond Hill, Georgia. See Doc. 38-11 at 2 (Zeitz Affidavit). The security deed included a mortgage insurance rider requiring monthly payments for private mortgage insurance. See Doc. 38-13 at 16 (Security Deed). The security deed further provided that these insurance payments would be paid through an escrow account. See id. at 5. The deed stated that all of the insured's payments would "be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under [the escrow provision]." Id. Mortgage Electronic Registration Systems, Inc., initially the nominee and grantee under the security deed, assigned the deed to GMAC on May 18, 2010. See Doc. 38-11 at 2-3 (Zeitz Affidavit).

On July 12, 2002, Donald applied for a mortgage life insurance policy with Liberty that named GMAC as the beneficiary. See Doc. 1-2 at 17, 19. The policy became effective on October 1, 2002. See id. at 17. The contract contained the following "Grace Period" clause:

> Grace Period. After the first premium has been paid, your coverage under this certificate will stay in effect for 31 days after each premium due date. These 31 days are called the grace period. . . . If a premium is not paid by the end of its grace period, your coverage under this certificate will terminate as of the premium due date.

Id. at 22. The contract contained a "Termination" clause, providing that "The insurance under this certificate will terminate on the date the first of the following occurs: . . . 3) the premiums for this coverage are not paid during the 31-day grace period . . . ." Id. at 23. The contract also stated, regarding modifications, that "[a]ny agreement to change or waive the

terms of this certificate must be in writing and signed by one of our officers at our home office." *Id.* at 21. Finally, in the event of the insured's death, the contract provided the following:

> Reinstatement. You may reinstate the coverage provided by this certificate. We will consider reinstatement during your life . . . within 3 years after the due date of the first premium.
>
> How to Reinstate Coverage. You must apply in writing and provide proof satisfactory to us that you . . . are still insurable. All unpaid premiums must be paid.

*Id.* at 22.

Boross and Donald paid a monthly premium of $48.51 to GMAC for the policy, and GMAC remitted these payments to Liberty. *See* Doc. 38-11 at 3.

Ultimately, Boross and Donald defaulted on the loan and failed to remedy the default. *See id.* at 3-4. They made their last monthly mortgage payment, a partial payment for August 1, 2009, in October 2009. *See id.* at 4. Liberty received Boross's last complete payment on August 31, 2009, which was for the premium due on July 1, 2009. *See* Doc. 42-1 at 32 (League Affidavit).

Donald passed away on December 14, 2009. *See* Doc. 1-2 at 9. Liberty, alleging that the life insurance policy had lapsed due to nonpayment, refused to pay GMAC. *See id.* at 27.

Throughout December 2009, Boross contacted Liberty and spoke to Liberty's representatives about her claim. *See* Doc. 47-4 (audio recordings of Boross's contact with Liberty).

On her first call, Boross asked Liberty's representative Matt about reinstating Donald's life insurance policy without mentioning that Donald had passed away. *See* Doc. 47-4, Rec. 1. Matt confirmed that if Boross paid all outstanding premiums on Donald's policy, the account would be reinstated. *See id.* Matt told Boross that if "something happened" before Boross placed her payment in the mail, then she would not be covered. *See id.* Matt apparently was under the impression that Boross was the insured under the policy. *See id.* (Matt to Boross: "No, we're already past that, and *you're* still alive, so *you* don't have to worry about that." (emphasis added)); *id.* (Boross's Son to Matt: What if something would've happened to one of my parents in this time frame [during lapse] and then with them not knowing about this, I mean . . . ." Matt to Son: "Well unfortunately, if something would have happened already then . . . then they would not have been covered." ). Boross did nothing during the first call to remedy Matt's misapprehension. *See id.* (Boross to Matt: "But if *I* were to die before today . . ." (emphasis added)).

During another phone call, Boross's son notified Matt that Donald had died on the December 14, 2009. *See* Doc. 47-4, Rec. 2. Matt told Boross's son that if Boross paid her due balance of $242.55, Liberty would reinstate Boross's policy, and Boross could initiate another claim. *See id.* Matt gave no assurances that Boross's claim would be accepted. *See id.*

2

On December 22, 2009, Boross sent a check to Liberty for $242.55. *See* Doc. 1-2 at 26.

On a third call, Boross attempted to file another claim on Donald's policy. *See* Doc. 47-4, Rec. 3. Matt stated that the policy was cancelled on November 25, 2009. *See id.* Matt stated that Liberty may not have reinstated the policy yet because of a problem with the payment "posting." *See id.* Matt then indicated that he was sending a packet of information that had to be completed before Liberty would process Boross's claim. *See id.*

Boross called Liberty twice more because she had not yet received the packet. *See* Doc. 47-4, Rec. 4-5. On the fifth call, a different representative did not mention the forms but did state that a letter had been mailed to Boross on January 6th. *See id.*, Rec. 5.

During yet another call to Liberty, a different representative informed Boross that Liberty had sent Boross a refund, explaining that the policy "ha[d] no value" because the it had not been paid through the month of Donald's death. *See* Doc. 47-4, Rec. 6.

On January 13, 2010, Liberty wrote Boross a letter indicating that the policy had lapsed despite Liberty's acceptance of Boross's check. *See* Doc. 1-2 at 27. Liberty refunded the $242.55 that was meant to reinstate the account. *See id.*

Boross sued Liberty and GMAC in the Superior Court of Bryan County, Georgia on May 5, 2010. *See id.* at 5. Boross alleged that Liberty breached the life insurance policy and that GMAC breached its fiduciary duty in failing to pay her insurance premiums to Liberty. *See id.* at 8-12.

Boross further sought an injunction against GMAC to prevent it from foreclosing on her home. *See id.* at 12-13. But GMAC had assigned its right to foreclose on the property to Fannie Mae. *See* Doc. 34-1 at 2. On June 1, 2010, Fannie Mae sold Boross's home at public auction. *See* Doc. 37 at 2.

Liberty and GMAC removed Boross's suit to this Court on June 14, 2010. *See* Doc. 1. On February 17, 2011, Boross amended her complaint to add Fannie Mae as a defendant. *See* Doc. 25. GMAC and Fannie Mae moved for summary judgment on July 1, 2011, s*ee* Doc. 38, and Liberty moved for summary judgment on July 22, 2011, *see* Doc. 42.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1437 (11th Cir. 1991).

"The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

3

which it believes demonstrate the absence of a genuine issue of material fact.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks removed).

The nonmoving party then "may not rest upon the mere allegations or denials of the [nonmoving] party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1294 (11th Cir. 1998). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.

Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

## IV. ANALYSIS

Defendants move for summary judgment on all of Boross's claims. *See* Docs. 38; 42.

### A. **Breach of Contract**

GMAC and Fannie Mae contend that Boross "has failed to assert any affirmative request for relief against Fannie Mae." *See* Doc. 38-1 at 4. Boross originally brought this claim against only Liberty. *See* Doc. 1-2 at 8. In her amended complaint, Boross requested "[t]hat [Fannie Mae] be added as a Defendant in this action." Doc. 25 at 2. Although it is difficult to ascertain what Boross intended with this statement, this Court construes the language to be an awkward attempt to add Fannie Mae as a defendant on all claims in the suit, including her breach of contract claim.

Nonetheless, Boross cannot maintain a breach of contract claim against Fannie Mae. Fannie Mae was not a party to the life insurance contract that Boross claims was breached. *See* Doc. 1-2 at 15-26. Boross has not argued that Fannie Mae is a third party beneficiary or has otherwise assumed any responsibilities under the contract. Thus, Fannie Mae could not have breached the contract. GMAC and Fannie Mae's summary judgment motion is **GRANTED** with respect to Boross's breach of contract claim against Fannie Mae.

Liberty has also moved for summary judgment on Boross's breach of contract claim against Liberty. *See* Doc. 42.

Boross contends that Liberty, by accepting Boross's late payment, "departed from the strict terms of payment and receipt of policy premiums" and "revived the original contract." Doc. 47-2 at 3. "If an insurance company receives, accepts, and *retains* past-due premiums which are paid subsequent to the due date and expiration of the grace period, it renews the contract and waives the forfeiture for non-payments provided the acceptance is unconditional and the facts are known." *Clark v. United Ins. Co. of Am.*, 199 Ga. App. 1, 2 (1991) (emphasis added).

The Eleventh Circuit, however, has determined that an insurance company does not retain payment when it refunds late payments within a reasonable amount of time. *See Rutland v. State Farm Mut. Auto Ins. Co.*, 2011 WL 1810613, at *2-3 (11th

4

Cir. May 12, 2011). In *Rutland*, the insured, whose coverage had been terminated due to nonpayment, got into a car accident while intoxicated. *See id.* at *1. The insured sent a check to her insurance company, and the insurance company reinstated her coverage. *Id.* An employee in her insurance agent's office assured the insured that she would receive retroactive coverage. *Id.* Nearly six weeks after the insured sent in her late payment, State Farm mailed her a letter denying coverage and indicating that her late payments had been credited back to her account. *Id.* The court decided that "six weeks was not unreasonably long because State Farm needed first to determine that Rutland's payment was improperly tendered." *Id.* at *3.

Here, Liberty refunded Boross's late payment approximately three weeks after she sent them. Three weeks was not an unreasonably long time for Liberty to evaluate Boross's claim and account status.

Because Liberty did not retain Boross's late payment, Liberty's summary judgment motion, *see* Doc. 42, is **GRANTED**.

### B. Injunctive Relief

Boross seeks injunctive relief against the foreclosure sale of her home. *See* Docs. 1-2 at 12-13; 25 at 1. But the foreclosure sale occurred on June 1, 2010. *See* Doc. 37 at 2. Boross's claim seeking an injunction was rendered moot by the sale. *See Muhammad v. HSBC Bank USA, N.A.*, 399 F. App'x 460, 461 (11th Cir. 2010); *Yates v. GMAC Mortg. LLC*, 2010 WL 5316550, at *2 (N.D. Ga. Dec. 17, 2010); *see also Grupo Dataflux v. Atlas Gloval Group, L.P.*, 541 U.S. 567, 593 (2004) (citing cases discussing a district court's special obligation to satisfy itself that it has jurisdiction). Dismissal for want of subject matter jurisdiction is the appropriate disposition for a moot claim. *See Muhammad*, 399 F. App'x at 461.

Boross contends this claim is "capable of repetition, yet evading review." *See* Doc 51-1 at 4. An issue is "capable of repetition, yet evading review" when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). There is no danger of Boross being subjected to a subsequent foreclosure action concerning the same property. Accordingly, the "capable of repetition, yet evading review" exception to mootness is inapplicable to the present situation.

Accordingly, this Court **DISMISSES** Boross's claims for injunctive relief against Defendants for lack of subject matter jurisdiction.

### C. Breach of Fiduciary Duty

Boross contends that GMAC and Fannie Mae breached a fiduciary duty they owed to her because of GMAC's role as administrator of the insurance escrow. *See* Docs. 1-2 at 10-12; 25 at 2; 51-1 at 2.

Under Georgia law "[a] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Tom Brown Contracting, Inc. v. Fishman*, 289

Ga. App. 601, 603 (2008) (internal quotation marks and citation removed).

Boross's claim fails at the first element. There is generally no confidential or fiduciary relationship between a lender and a borrower or a mortgagee and mortgagor. See *Citizens & S. Nat'l Bank v. Arnold*, 240 Ga. 200, 201 (1977) ("There is no confidential relationship between a bank and its customers merely because the customer has advised with, relied upon, and trusted the bankers in the past."); *Moore v. Bank of Fitzgerald*, 225 Ga. App. 122, 125-26 (1997) ("[A]bsent special circumstances . . . there is . . . no confidential relationship between lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interests." (internal quotation marks and citation omitted)).

GMAC and Fannie Mae incur no duties under the theory that an escrow is a trust. Georgia law imposes fiduciary duties in express and implied trusts. See O.C.G.A. §§ 53-12-20, 53-12-132(a) (2011). But without evidence that an express or implied trust exists, "funds paid by a mortgagor to an escrow account to be used by the mortgagee to meet tax and insurance obligations . . . do not constitute trust properties such as would render the mortgagee accountable to the mortgagor for any earnings or profits from the funds." *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1341-42 (11th Cir. 2000). No trust situation results because "retention of future tax and insurance payments inure[s] to the benefit of both parties in protecting the secured property." *Id.* at 1341. There is no evidence in this case to suggest that an express or implied trust exists.

Furthermore, the administration of an escrow account does not "thrust on [the escrow account administrator] the role of agent." *Id.* at 1342.

Boross alleges that by undertaking the obligation of paying Liberty through the escrow arrangement, GMAC had a duty exercise reasonable care in making payments and subsequently failed that duty. See Doc. 51-1 at 5. The Georgia Supreme Court has adopted the Second Restatement provision regarding liability to third persons for negligent performance of undertakings:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Huggins v. Aetna Cas. & Sur. Co.*, 245 Ga. 248, 248 (1980) (quoting RESTATEMENT (SECOND) OF TORTS § 324A (1965)).

Boross points to no evidence of GMAC's failure to exercise reasonable care in making payments to Liberty. There is no dispute that Boross made her last mortgage

6

payment, a partial payment for August 1, 2009 debt, in October 2009. *See* Doc. 38-11 at 4. Liberty received Boross's last complete payment on August 31, 2009, which was for the premium due on July 1, 2009. *See* Doc. 42-1 at 32 (League Affidavit). According to the order of payment priority in the security deed, GMAC used payments to satisfy first the interest and principal due under the mortgage, then the amount due for escrow items. *See* Doc. 38-13 at 5 (Security Deed). Because Boross failed to make a complete payment for the amount owed on the mortgage in August, GMAC acted in accordance with the contract in remitting no payments to Liberty in July or thereafter.

Boross argues that GMAC's failure to provide notice of lapse caused her to default on payments to GMAC. *See* Doc. 51-1 at 6. In Georgia, written notice of cancellation is generally required before the termination of an insurance policy will be effective. *See* O.C.G.A. § 32-24-44. But Georgia courts draw a distinction between cancellation and expiration or lapse. *See Goodley v. Fireman's Fund American Life Ins. Co.*, 173 Ga. App. 277, 277 (1985). Thus, Georgia insurers are under no duty to provide notice when an insured's policy lapses due to non payment. *See Guideone Life Ins. Co. v. Ward*, 275 Ga. App. 1, 5 (2005) ("[T]he notification requirements of OCGA § 33-24-44 do not apply where the policy provides for its expiration for failure to pay the premium within the grace period."). As insurers generally are under no duty to warn of lapse, GMAC, as the escrow manager, could not have incurred any such duty.

There is no dispute that the only relationship that existed, if any with respect to Fannie Mae, between Boross and GMAC or Fannie Mae was that of lender and borrower, mortgagor and mortgagee. *See* Doc. 1-2 at 10-12. Thus, GMAC and Fannie Mae owed no duty to Boross. Defendant's summary judgment motion on Boross's breach of fiduciary duty claim against Defendants is **GRANTED**.

### D. Attorneys' Fees

In Georgia, attorneys' fees and other expenses of litigation are "ancillary and recoverable only in cases where other elements of damages are recoverable." *Barnett v. Morrow*, 196 Ga. App. 201, 202 (1990); *see also* O.C.G.A. § 13-6-11. Litigants must actually recover other elements of damages before they are able to recover attorneys' fees. *See Barnett*, 196 Ga. App. at 202.

As Defendants are entitled to judgment as a matter of law on all of Boross's substantive claims against them, they are also entitled to summary judgment on Boross's ancillary claim for attorneys' fees and litigation expenses.

Defendants' summary judgment motion on Boross's claim for attorneys' fees and expenses of litigation is **GRANTED**.

### E. Pre-Suit Notice Provision

Defendants contend that Boross's "claims fail as a matter of law because she failed to comply with the pre-suit notice provision in the security deed." *See* Doc. 38-1 at 9. The Court does not reach this issue because it dismisses Boross's claims on other grounds.

7

## V. CONCLUSION

GMAC and Fannie Mae's motion for summary judgment, *see* Doc. 38, is ***GRANTED***.

Liberty's motion for summary judgment, *see* Doc. 42, is ***GRANTED***. This case is ***DISMISSED***.

This 13th day of September 2011.

*[signature]*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA